ELECTRONIC

**May 15,2009**

STEVEN M. LARIMORE
CLERK  U.S.  DIST.  CT.
S.D.  OF  FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.

# 09-60723-Civ-JORDAN/MCALILEY

EL-AD  RESIDENCES  AT  MIRAMAR
CONDOMINIUM ASSOCIATION, INC., a
Florida not-for-profit corporation,

       Plaintiff,

v.

MT. HAWLEY INSURANCE COMPANY,
a foreign corporation, WESTCHESTER
SURPLUS  LINES  INSURANCE
COMPANY, a foreign corporation,

       Defendants.

_____/

## COMPLAINT

Plaintiff, EL-AD RESIDENCES AT MIRAMAR CONDOMINIUM ASSOCIATION,

INC. ("RESIDENCES"), by and through its undersigned counsel and pursuant to the

*Federal Rules of Civil Procedure,* sues the Defendants, MT. HAWLEY INSURANCE

COMPANY ("MT. HAWLEY") and WESTCHESTER SURPLUS LINES INSURANCE

COMPANY ("WESTCHESTER") and states:

## GENERAL ALLEGATIONS

1.    This is an action for declaratory judgment, including supplemental relief,

and breach of contract (actual cash value), breach of contract (replacement cost value),

and breach of the implied warranty of good faith and fair dealing, seeking judgment for

damages in excess of $75,000.00 exclusive of interest, costs and attorneys' fees.

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

1 of 109

2.      Pursuant to 28 U.S.C. §1332, this Court has subject matter jurisdiction because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees, and there is complete diversity of citizenship between the parties.

3.      At all material times, RESIDENCES was a condominium association and not-for-profit corporation organized and existing under the laws of the State of Florida, and was authorized to do, and continues to do business in Broward County, Florida. RESIDENCES has its principal place of business in Broward County, Florida.

4.      At all material times, MT. HAWLEY was a foreign corporation and surplus lines insurance carrier authorized by the State of Florida pursuant to a letter of eligibility to transact insurance in Florida.

5.      At all material times, MT. HAWLEY transacted business in Broward County, Florida.

6.      At all material times, WESTCHESTER was a foreign corporation and surplus lines insurance carrier authorized by the State of Florida pursuant to a letter of eligibility to transact insurance in Florida.

7.      At all material times, WESTCHESTER transacted business in Broward County, Florida.

8.      MT. HAWLEY issued Policy No. MCP0140064, which provided property coverage to RESIDENCES of $2 million per occurrence for the twelve month period beginning September 07, 2005 and ending September 07, 2006.  True and correct copies of the declaration page and insurance policy (the "Mt. Hawley Insurance Contract") are attached as **Composite Exhibit "A"**.

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

2 of 109

9.    WESTCHESTER issued Policy No. D35910177 001, which provided property coverage to RESIDENCES of $8 million per occurrence in excess of $2 million per occurrence for the twelve month period beginning September 07, 2005 and ending September 07, 2006.  A true and correct copy of the declaration page (the "Westchester Insurance Contract") is attached as **Exhibit "B"**[1].

10.    The intent and purpose of both the Mt. Hawley Insurance Contract and the Westchester Insurance Contract (collectively the "Insurance Contracts") are to provide commercial residential property coverage to the named insured, RESIDENCES, for direct physical loss to the insured property from September 07, 2005 through September 07, 2006, with MT. HAWLEY providing the first layer of coverage in the amount of $2 million per occurrence and WESTCHESTER providing the second layer of coverage in the amount of $8 million per occurrence in excess of the first layer. WESTCHESTER is liable for any covered loss, damages and/or judgment in excess of the first layer of coverage.

11.    The Westchester Insurance Contract adopts and incorporates by reference, all terms and conditions of the Mt. Hawley Insurance Contract to the extent that its terms do not conflict with the express terms and conditions contained in the Westchester Insurance Contract.  With respect to the material provisions contained within the Insurance Contracts that are relevant to this action, there are no conflicting terms or conditions.   WESTCHESTER has also, through the Westchester Insurance Contract, expressly adopted and incorporated by reference, the separate "windstorm" deductible contained within the Westchester Insurance Contract.

---

[1] RESIDENCES has requested a copy of the Westchester policy from WESTCHESTER but has not received it yet.  WESTCHESTER has a copy of the policy.

12.     On or about October 24, 2005, Hurricane Wilma struck Broward County, Florida, including RESIDENCES.

13.     On or about October 24, 2005, RESIDENCES sustained significant hurricane damages to its residential condominium property as a result of Hurricane Wilma.

14.     RESIDENCES timely reported the damages to the Defendants.

15.     Following Hurricane Wilma, MT. HAWLEY and WESTCHESTER had an opportunity to inspect the damages to the insured property.

16.     To date, over three years after Hurricane Wilma, the Defendants have failed to provide RESIDENCES with any estimate of the damages, and have failed to adjust, pay, and/or settle RESIDENCES' claim for hurricane damage, despite their obligations to do so under Section 627.70131, *Florida Statutes*, and the Insurance Contracts.

17.     Venue lies in the Southern District of Florida because, among other things, the Insurance Contracts were entered into and provided insurance coverage for residential property located in Broward County, Florida.

18.     All conditions precedent to the filing of this action have occurred and/or have been waived.

## COUNT I
## DECLARATORY JUDGMENT

19.     This is an action by RESIDENCES against MT. HAWLEY and WESTCHESTER for declaratory judgment and supplemental relief, the subject matter of which exceeds $75,000.00 exclusive of interest, costs and attorneys' fees, pursuant to Chapter 86, *Florida Statutes*.

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

4 of 109

20.   RESIDENCES realleges and reavers the allegations contained in paragraphs 1 through 18 above, as if fully set forth herein.

21.   RESIDENCES seeks a declaratory judgment: (a) that the Mt. Hawley Insurance Contract is valid and enforceable; (b) that pursuant to the terms and conditions of the Insurance Contracts, RESIDENCES has a valid and enforceable right to coverage, and to a determination of the total amount of all damages sustained from Hurricane Wilma notwithstanding MT. HAWLEY's and/or WESTCHESTER's failure to timely adjust, pay and/or settle RESIDENCES' claim; (c) that the Mt. Hawley Insurance Contract fails to comply with Section 627.701(a-b), *Florida Statutes*, and 627.701(4)(a), *Florida Statutes,* and therefore, the provisions concerning co-insurance and a separate hurricane deductible are void and unenforceable; (d) determining the total amount of the losses and damages caused by Hurricane Wilma to RESIDENCES; and (e) awarding RESIDENCES supplemental relief to fully compensate RESIDENCES for all of its hurricane related damages under Chapter 86, *Florida Statutes*.

22.   RESIDENCES also seeks a declaratory judgment that the provision concerning a separate deductible of "3% of total values at risk Per Building (including time element if applicable) at the time of loss for Windstorm or Hail" is vague and ambiguous.   The term "Windstorm" is not defined. The amount of the separate deductible for Windstorm or Hail is not stated as a sum certain. RESIDENCES seeks a declaratory judgment that the failure to define the term "Windstorm" renders the applicability of the separate deductible vague, ambiguous. Moreover, the failure to state the deductible as a sum certain renders the amount of the deductible vague and ambiguous. Because the separate deductible is vague, ambiguous, and otherwise

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

5 of 109


violates Section 627.701, *Florida Statutes*, it is unenforceable and/or should be construed against MT. HAWLEY and WESTCHESTER.   Plaintiff further and alternatively seeks a declaratory judgment that, to the extent the amount of the separate deductible can be ascertained, it must be construed to indicate that the maximum separate deductible for Windstorm or Hail loss is 3% of the $2 million limit of coverage offered under the Mt. Hawley Insurance Contract because $2 million is all that is "at risk" under the Mt. Hawley Insurance Contract.

23.    MT. HAWLEY's and WESTCHESTER's actions have raised doubt and insecurity for RESIDENCES regarding: the validity, enforceability and scope of the Insurance Contracts; the total amount of the covered damages RESIDENCES sustained from Hurricane Wilma; MT. HAWLEY's and WESTCHESTER's duties to timely adjust, pay and/or settle RESIDENCES' claim for all damages sustained from Hurricane Wilma; the validity and enforceability of the co-insurance and separate hurricane deductible provision of the Mt. Hawley Insurance Contract; and, if determined to be enforceable, the amount of the separate hurricane deductible to be applied in this case.

24.    Paragraphs E.4 and G.3 (form CP 00 17 04 02) as well as paragraph D (form CP 01 25 06 95) of the Mt. Hawley Insurance Contract, and the Westchester Insurance Contract, together with Section 627.70131, *Florida Statutes*, require MT. HAWLEY and WESTCHESTER to timely adjust, pay and/or settle RESIDENCES' claims for the damages it sustained from Hurricane Wilma.   MT. HAWLEY and WESTCHESTER have failed to adjust, pay and/or settle RESIDENCES' claims. RESIDENCES is entitled to a declaratory judgment that the Insurance Contracts and

Florida law require MT. HAWLEY and WESTCHESTER to timely adjust, pay and/or settle RESIDENCES' hurricane damage claims.

25.     RESIDENCES suffered extensive losses and damages from Hurricane Wilma and timely notified MT. HAWLEY and WESTCHESTER of those losses and damages. MT. HAWLEY and WESTCHESTER have failed to adjust the claim and determine the total amount of damages that RESIDENCES sustained from Hurricane Wilma. RESIDENCES is entitled to declaratory judgment to determine the total amount of its Hurricane Wilma damages and for supplemental relief to fully compensate RESIDENCES for its Hurricane Wilma losses and damages.

26.     The Insurance Contracts fail to comply with Section 627.701, *Florida Statutes*, because the faces of the Insurance Contracts do not contain a co-insurance notice as is required. Further, the faces of the Insurance Contracts fail to contain a separate hurricane deductible notice as required and/or fail to comply with the wording and bold faced type size requirements set forth in Section 627.701, *Florida Statutes.*

27.     RESIDENCES is entitled to a declaratory judgment that the co-insurance and separate hurricane deductible provisions of the Mt. Hawley Insurance Contract are void and unenforceable because the Mt. Hawley Insurance Contract does not comply with the requirements set forth in Section 627.701(1)(a-b), *Florida Statutes*, and Section 627.701(4)(a), *Florida Statutes*.

28.     Alternatively, to the extent that the separate hurricane deductible is determined to be enforceable, RESIDENCES is entitled to declaratory judgment that the language "3% of total values at risk Per Building (including time element if applicable) at the time of loss for Windstorm or Hail" must be construed so that the maximum

deductible to be applied for all buildings combined is 3% of the $2 million limit of coverage under the Mt. Hawley Insurance Contract.

29.     RESIDENCES, MT. HAWLEY and WESTCHESTER have present, actual, adverse and antagonistic interests in the validity and enforceability of the Insurance Contracts; the full amount of RESIDENCES' losses and damages from Hurricane Wilma; the coverage provided by the Insurance Contracts; the validity and enforceability of the co-insurance and separate hurricane deductible provision of the Mt. Hawley Insurance Contract; and, the amount of the hurricane deductible to be applied in this case.

30.     RESIDENCES' adverse and antagonistic interests are before this Court by proper process.  The relief RESIDENCES seeks is not the mere rendering of legal advice.

31.     RESIDENCES has a *bona fide*, present and practical need for a declaration of its rights under the Insurance Contracts.

32.     RESIDENCES has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

33.     RESIDENCES is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes,* which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

8 of 109

34.   Alternatively, Section 626.911, *Florida Statutes,* provides in pertinent part:

> In any action against an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer, upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business therein, if the insurer or person representing or aiding such insurer has failed for 30 days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, the trial judge shall allow to the plaintiff a reasonable attorney's fee or compensation and include such fee or compensation in any judgment that may be rendered in such action.

35.   RESIDENCES is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes*.

WHEREFORE, RESIDENCES requests the Court enter a declaratory judgment against MT. HAWLEY and WESTCHESTER (a) that the Insurance Contracts are valid and enforceable; (b) that pursuant to the terms and conditions of the Insurance Contracts, RESIDENCES has a valid and enforceable right to coverage, and a determination of the total amount of all damages RESIDENCES sustained from Hurricane Wilma; (c) determining the total amount of the losses and damages caused by Hurricane Wilma to RESIDENCES; (d) that the Mt. Hawley Insurance Contract fails to comply with Section 627.701, *Florida Statutes*, and therefore, the co-insurance and separate hurricane deductible provisions are void and unenforceable; (e) that because the provision concerning a separate "3% of total values at risk Per Building (including time element if applicable) at the time of loss for Windstorm or Hail" is ambiguous, it is unenforceable against RESIDENCES and/or should be construed against MT. HAWLEY and WESTCHESTER; (f) if determined enforceable, the separate hurricane deductible is 3% of the $2 million limit of coverage under the Mt. Hawley Insurance

Contract; (g) awarding supplemental relief to fully compensate RESIDENCES for all of its hurricane related damages under Chapter 86, *Florida Statutes*; and, (h) awarding RESIDENCES its reasonable attorneys' fees under Section 627.428, *Florida Statutes*, or in the alternative, under Section 626.911, *Florida Statutes*, together with taxable costs, prejudgment interest under Section 627.70131, *Florida Statutes*, and any other and further relief the Court deems just, equitable and proper.

<div align="center">

**COUNT II**
**BREACH OF CONTRACT AGAINST MT. HAWLEY**
(Actual Cash Value)

</div>

36.    This is an action against MT. HAWLEY for breach of the Mt. Hawley Insurance Contract seeking damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

37.    RESIDENCES realleges the allegations contained in paragraphs 1 through 18 above, as if fully set forth herein.

38.    In or about September, 2005, MT. HAWLEY offered to provide property coverage to RESIDENCES for the twelve (12) month period commencing September 7, 2005 in consideration for a premium.   In or about September, 2005, RESIDENCES accepted MT. HAWLEY's offer of property coverage and paid the premium.

39.    The Mt. Hawley Insurance Contract set forth the rights and obligations of MT. HAWLEY to RESIDENCES with respect to its claim, including among other things, the following pertinent terms and conditions:

<div align="center">*     *     *</div>

> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

*See* <u>**Composite Exhibit "A"**</u>, Paragraph E.4.a.

\*        \*        \*

> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides…

*See* <u>**Composite Exhibit "A",**</u> Paragraph G.3.c.

40.     Pursuant to the terms of the Mt. Hawley Insurance Contract, RESIDENCES has a right to coverage for property losses or damages caused by Hurricane Wilma.

41.     In or about October, 2005 through October, 2008, and continuing to the present time, MT. HAWLEY has materially breached the Mt. Hawley Insurance Contract by failing to pay the actual cash value of the losses or damages to the insured property caused by Hurricane Wilma.

42.     In or about November, 2005, and at other times following Hurricane Wilma, RESIDENCES made a claim for the losses and damages caused from Hurricane Wilma and requested to be paid the actual cash value due under the Mt. Hawley Insurance Contract.

43.     Notwithstanding RESIDENCES' claim, MT. HAWLEY has not determined the value of the lost or damaged property and has not paid RESIDENCES the full actual cash value due under the Mt. Hawley Insurance Contract. Instead, MT. HAWLEY contends that the majority of the loss is under deductible and, otherwise, has denied the claim.

44.     MT. HAWLEY breached the Mt. Hawley Insurance Contract by failing to accurately adjust RESIDENCES' claim and properly determine the value of its lost or damaged property and by failing to fully pay RESIDENCES the actual cash value of the lost or damaged property.

45.     MT. HAWLEY further breached the Mt. Hawley Insurance Contract by failing to correctly adjust, fully pay or settle RESIDENCES' actual cash value claim and in so doing, frustrated RESIDENCES' ability to make the repairs necessitated by Hurricane Wilma.

46.     As a direct result of MT. HAWLEY's material breaches of the Mt. Hawley Insurance Contract, RESIDENCES has suffered millions of dollars in damages.

47.     RESIDENCES has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

48.     RESIDENCES is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

49.     Alternatively, Section 626.911, *Florida Statutes*, provides in pertinent part:

> In any action against an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer, upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business there, if the insurer or person representing or

> aiding such insurer has failed for 30 days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, the trial judge shall allow to the plaintiff a reasonable attorney's fee or compensation and include such fee or compensation in any judgment that may be rendered in such action.

50.    RESIDENCES is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes.*

WHEREFORE, RESIDENCES demands judgment against MT. HAWLEY for compensatory damages, together with interest, costs and attorneys' fees under Section 627.428, *Florida Statutes*, or in the alternative, under Section 626.911, *Florida Statutes*, together with taxable costs, prejudgment interest under Section 627.70131, *Florida Statutes*, and other such relief as this Court deems just, equitable and proper.

## COUNT III
## BREACH OF CONTRACT AGAINST MT. HAWLEY
(Replacement Cost Value)

51.    This is an action by RESIDENCES against MT. HAWLEY for breach of the Mt. Hawley Insurance Contract (replacement cost value) seeking damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

52.    RESIDENCES reavers and realleges the allegations contained in paragraphs 1 through 18 above, as if fully set forth herein.

53.    The Mt. Hawley Insurance Contract sets forth the rights and obligations of MT. HAWLEY to RESIDENCES with respect to its claim, including among other things, the following pertinent terms and conditions:

> *        *        *
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation condition in this Coverage

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

13 of 109

Form or any applicable provision which amends or
supersedes the Valuation Condition.

*See* **Composite Exhibit "A"**, Paragraph E.4.a.

\*       \*       \*

You may make a claim for loss or damage covered by this
insurance on an actual cash value basis instead of on a
replacement cost basis.  In the event you elect to have loss
or damage settled on an actual cash value basis, you may
still make a claim for the additional coverage this Optional
Coverage provides…

*See* **Composite Exhibit "A"**, Paragraph G.3.c.

54.    Pursuant to the terms and conditions of the Mt. Hawley Insurance
Contract, RESIDENCES has a right to coverage for property losses or damages caused
by Hurricane Wilma.

55.    In or about October, 2005, and at other times following Hurricane Wilma,
RESIDENCES made a claim to MT. HAWLEY for the losses and damages caused from
Hurricane Wilma and has requested that MT. HAWLEY pay RESIDENCES the actual
cash and replacement cost values for its losses and damages, as provided by the Mt.
Hawley Insurance Contract.

56.    Notwithstanding RESIDENCES' claim, MT. HAWLEY has not determined
the value of the lost or damaged property and has not paid to RESIDENCES the actual
cash value and the replacement cost value due under the Mt. Hawley Insurance
Contract.  Instead, MT. HAWLEY contends that the majority of the loss is under
deductible and has otherwise denied the claim.

57.    MT. HAWLEY materially breached the Mt. Hawley Insurance Contract by
failing   to   adjust   RESIDENCES'   claim,   failing   to   determine   the   value   of   the

RESIDENCES' lost or destroyed property, and by failing to pay RESIDENCES the actual cash value and the replacement cost value of the lost or damaged property.

58.     MT. HAWLEY further breached the Mt. Hawley Insurance Contract, and is continuing to do so by failing to adjust, pay and/or settle RESIDENCES' actual cash value claim and, in doing so, frustrated RESIDENCES' ability to make the repairs necessary for RESIDENCES to receive the reimbursements for its claim on a replacement cost basis, which constitutes yet another breach of the Mt. Hawley Insurance Contract.

59.     As a direct and proximate result of MT. HAWLEY's breaches of the Mt. Hawley Insurance Contract, RESIDENCES has suffered millions of dollars in damages.

60.     RESIDENCES has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

61.     RESIDENCES is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

62.     Alternatively, Section 626.911, *Florida Statutes*, provides in pertinent part:

> In any action against an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer, upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business there, if the insurer or person representing or

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

15 of 109

> aiding such insurer has failed for 30 days after demand prior
> to the commencement of the action to make payment in
> accordance with the terms of the contract, the trial judge
> shall allow to the plaintiff a reasonable attorney's fee or
> compensation and include such fee or compensation in any
> judgment that may be rendered in such action.

63.    RESIDENCES is further entitled to recover prejudgment interest pursuant

to Section 627.70131, *Florida Statutes.*

WHEREFORE, RESIDENCES demands judgment against MT. HAWLEY for

compensatory damages, together with interest, costs and attorneys' fees under Section

627.428, *Florida Statutes*, or in the alternative, under Section 626.911, *Florida Statutes*,

together with taxable costs, prejudgment interest under Section 627.70131, *Florida

Statutes*, and other such relief as this Court deems just, equitable and proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF GOOD FAITH
## AND FAIR DEALING AGAINST MT. HAWLEY

64.    This is an action by RESIDENCES against MT. HAWLEY for breach of

implied warranty of good faith and fair dealing, the subject matter of which exceeds

$75,000, exclusive of interest, costs and attorneys' fees.

65.    RESIDENCES realleges and reavers the allegations contained in

paragraphs 1 through 18 above, as if fully set forth herein.

66.    An implied warranty of good faith and fair dealing is a material term in

every Florida contract, including the Mt. Hawley Insurance Contract.

67.    The Mt. Hawley Insurance Contract does not specify the permissibility or

scope of MT. HAWLEY's conduct in relation to the express terms of the Mt. Hawley

Insurance Contract and is unclear.

68.    The Mt. Hawley Insurance Contract states:

> We will determine the value of lost or damaged property or
> the cost of its repair or replacement, in accordance with the
> applicable terms of the Valuation Condition in this Coverage
> Form or any applicable provision which amends or
> supersedes the Valuation Condition.
>
> <div align="center">*     *     *</div>

*See* **Composite Exhibit "A"**, Paragraph E.4.g.

69.    The Mt. Hawley Insurance Contract neither defines the standards governing MT. HAWLEY's exercise of its discretion nor provides standards governing the time-frame within which MT. HAWLEY must adjust or value a claim.

70.    Although the Mt. Hawley Insurance Contract does not specify the time-frame within which MT. HAWLEY must determine the value of RESIDENCES' claim, RESIDENCES reasonably expected MT. HAWLEY to exercise its discretion within a reasonable amount of time given the nature of the loss and the attendant circumstances.

71.    Some three years later, through its delay and failure to adjust RESIDENCES' claim, MT. HAWLEY continues to deprive RESIDENCES of the benefits of the Mt. Hawley Insurance Contract. Following Hurricane Wilma on October 24, 2005 and continuing to the present, MT. HAWLEY has breached the implied covenant of good faith and fair dealing by delaying and failing to reasonably value the losses or damage RESIDENCES sustained during Hurricane Wilma; delaying and failing to reasonably determine the cost to repair or replace RESIDENCES' property that was damaged or lost during Hurricane Wilma; delaying and failing to make reasonable efforts to agree with RESIDENCES as to the value of the lost or damaged property or the cost of its repair or replacement and failing to value and/or adjust the loss with RESIDENCES promptly and reasonably given the attendant circumstances.

72.    MT. HAWLEY's delay and failure to timely adjust RESIDENCES' claim has frustrated the purpose of the Mt. Hawley Insurance Contract and had disappointed RESIDENCES' reasonable commercial expectations under the Mt. Hawley Insurance Contract.

73.    As a direct result of MT. HAWLEY's breaches of the implied warranty of good faith and fair dealing in the Mt. Hawley Insurance Contract, RESIDENCES has suffered general compensatory damages in the millions of dollars.  RESIDENCES has also suffered special damages, including, but not limited to, the expenses of defending liens resulting from hurricane related roof repairs for which MT. HAWLEY unreasonably failed to adjust, pay or settle.

74.    RESIDENCES has retained the undersigned attorneys and is obligated to pay them a reasonable fee for their services.

75.    RESIDENCES is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon rendition of a judgment of decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the inured beneficiary a reasonable sum as fees or compensation for the insured's of beneficiary's attorney prosecuting the suit in which the recovery is had.

76.    Alternatively, Section 626.911, *Florida Statutes*, provides in pertinent part:

> In any action against an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer, upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business there, if the insurer or person representing or

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

18 of 109

> aiding such insurer has failed for 30 days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, the trial judge shall allow to the plaintiff a reasonable attorney's fee or compensation and include such fee or compensation in any judgment that may be rendered in such action.

77.     RESIDENCES is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes*

WHEREFORE, RESIDENCES demands judgment against MT. HAWLEY for compensatory damages and special damages, together with interest, costs and attorneys' fees under 627.428, *Florida Statutes,* and such other relief as this Court deems just, equitable and proper.

## COUNT V
## BREACH OF CONTRACT AGAINST WESTCHESTER
(Actual Cash Value)

78.     This is an action by RESIDENCES against WESTCHESTER for breach of the Westchester Insurance Contract seeking damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

79.     RESIDENCES realleges the allegations contained in paragraphs 1 through 18 above, as if fully set forth herein.

80.     In or about September, 2005, WESTCHESTER offered to provide property coverage to RESIDENCES for the twelve month period commencing September 7, 2005 in consideration for a premium.  In or about September, 2005, RESIDENCES accepted WESTCHESTER's offer of property coverage and paid the premium.

81.     The Westchester Insurance Contract adopted and incorporated by reference, the terms and conditions of the Mt. Hawley Insurance Contract. Accordingly, the following terms and conditions of the Mt. Hawley Insurance Contract set forth the

rights and obligations of WESTCHESTER to RESIDENCES with respect to its claim, including among other things, the following pertinent terms and conditions:

> \*       \*       \*
>
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

See **Composite Exhibit "A"**, Paragraph E.4.a.

> \*       \*       \*
>
> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides...

See **Composite Exhibit "A"**, Paragraph G.3.c.

82.    Pursuant to the terms of the Mt. Hawley Insurance Contract, as adopted by the Westchester Insurance Contract, RESIDENCES has a right to property coverage for loss or damages caused by Hurricane Wilma.

83.    In or about October, 2005  through October, 2008, and continuing to the present time, WESTCHESTER has materially breached the Westchester Insurance Contract by failing to pay the actual cash value of the losses or damages to the insured property caused by Hurricane Wilma.

84.    In or about November, 2005, and/or at other times following Hurricane Wilma, RESIDENCES made a claim for the losses and damages caused from Hurricane Wilma and requested to be paid the actual cash value due under the Westchester Insurance Contract.

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

20 of 109

85. Notwithstanding RESIDENCES' claim, WESTCHESTER has not determined the value of the lost or damaged property and has not paid RESIDENCES the actual cash value due under the Westchester Insurance Contract. Instead, WESTCHESTER, through its delay and failure to pay, has effectively denied the claim.

86. WESTCHESTER breached the Westchester Insurance Contract by failing to adjust RESIDENCES' claim and determine the value of its lost or damaged property and by failing to pay RESIDENCES the actual cash value of the lost or damaged property.

87. WESTCHESTER further breached the Westchester Insurance Contract by failing to adjust, pay and/or settle RESIDENCES' actual cash value claim and in so doing, frustrated RESIDENCES' ability to make the repairs necessitated by Hurricane Wilma.

88. As a direct and proximate result of WESTCHESTER's material breaches of the Westchester Insurance Contract, RESIDENCES has suffered millions of dollars in damages.

89. RESIDENCES has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

90. RESIDENCES is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or

beneficiary's attorney prosecuting the suit in which the recovery is had.

91.     Alternatively, Section 626.911, *Florida Statutes*, provides in pertinent part:

> In any action against an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer, upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business there, if the insurer or person representing or aiding such insurer has failed for 30 days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, the trial judge shall allow to the plaintiff a reasonable attorney's fee or compensation and include such fee or compensation in any judgment that may be rendered in such action.

92.     RESIDENCES is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes*.

WHEREFORE, RESIDENCES demands judgment against WESTCHESTER for compensatory damages, together with interest, costs and attorneys' fees under Section 627.428, *Florida Statutes*, or in the alternative, under Section 626.911, *Florida Statutes*, together with taxable costs, prejudgment interest under Section 627.70131, *Florida Statutes*, and other such relief as this Court deems just, equitable and proper.

<div align="center">

**COUNT VI**
**BREACH OF CONTRACT AGAINST WESTCHESTER**
(Replacement Cost Value)

</div>

93.     This is an action by RESIDENCES against WESTCHESTER for breach of the Westchester Insurance Contract (replacement cost value) seeking damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

94.     RESIDENCES reavers and realleges the allegations contained in paragraphs 1 through 18 above, as if fully set forth herein.

95.     The Westchester Insurance Contract adopted and incorporated the terms and conditions of the Mt. Hawley Insurance Contract.   Accordingly, the terms and conditions contained in the Mt. Hawley Insurance Contract set forth the rights and obligations of WESTCHESTER to RESIDENCES with respect to its claim, including among other things, the following pertinent terms and conditions:

*          *          *

> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

See **Composite Exhibit "A"**, Paragraph E.4.a.

*          *          *

> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides...

See **Composite Exhibit "A"**, Paragraph G.3.c.

96.     Pursuant to the terms and conditions of the Mt. Hawley Insurance Contract, as adopted by the Westchester Insurance Contract, RESIDENCES has a right to property coverage for loss or damages caused by Hurricane Wilma.

97.     In or about October, 2005, and/or at other times following Hurricane Wilma, RESIDENCES made a claim to WESTCHESTER for the losses and damages caused from Hurricane Wilma and has requested that WESTCHESTER pay RESIDENCES the actual cash and replacement cost values for its losses and damages, as provided by the Westchester Insurance Contract.

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900 * Facsimile (561) 820-2542

23 of 109

98.     Notwithstanding RESIDENCES' claim, WESTCHESTER has not determined the value of the lost or damaged property and has not paid RESIDENCES the actual cash value and the replacement cost value due under the Westchester Insurance Contract. Instead, WESTCHESTER, through its delay and failure to pay, has effectively denied the claim.

99.     WESTCHESTER materially breached the Westchester Insurance Contract by failing to adjust RESIDENCES' claim, failing to determine the value of the RESIDENCES' lost or destroyed property, and by failing to pay RESIDENCES the actual cash value and the replacement cost value of the lost or damaged property.

100.    WESTCHESTER further breached the Westchester Insurance Contract, and is continuing to do so by failing to adjust, pay and/or settle RESIDENCES' actual cash value claim and, in doing so, frustrated RESIDENCES' ability to make the repairs necessary for RESIDENCES to receive the reimbursements for its claim on a replacement cost basis, which constitutes yet another breach of the Westchester Insurance Contract.

101.    As a direct and proximate result of WESTCHESTER's breaches of the Westchester Insurance Contract, RESIDENCES has suffered millions of dollars in damages.

102.    RESIDENCES has retained the undersigned attorneys to represent it in this action and is required to pay them a reasonable fee for their services.

103.    RESIDENCES is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any

named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

104.   Alternatively, Section 626.911, *Florida Statutes*, provides in pertinent part:

In any action against an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer, upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business there, if the insurer or person representing or aiding such insurer has failed for 30 days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, the trial judge shall allow to the plaintiff a reasonable attorney's fee or compensation and include such fee or compensation in any judgment that may be rendered in such action.

105.   RESIDENCES is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes*.

WHEREFORE, RESIDENCES demands judgment against WESTCHESTER for compensatory damages, together with interest, costs and attorneys' fees under Section 627.428, *Florida Statutes*, or in the alternative, under Section 626.911, *Florida Statutes*, together with taxable costs, prejudgment interest under Section 627.70131, *Florida Statutes*, and other such relief as this Court deems just, equitable and proper.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF GOOD FAITH
## AND FAIR DEALING AGAINST WESTCHESTER

106.   This is an action by RESIDENCES against WESTCHESTER for breach of implied warranty of good faith and fair dealing, the subject matter of which exceeds $75,000, exclusive of interest, costs and attorneys' fees.

107.   RESIDENCES realleges and reavers the allegations contained in paragraphs 1 through 18 above, as if fully set forth herein.

108.   An implied warranty of good faith and fair dealing is a material term in every Florida contract, including the Westchester Insurance Contract.

109.   Neither the Westchester Insurance Contract nor the Mt. Hawley Insurance Contract as adopted by the Westchester Insurance Contract specify the permissibility or scope of WESTCHESTER's conduct regarding to the express terms of the Westchester Insurance Contract; therefore the contracts individual and construed together on this issue are unclear.

110.   The Mt. Hawley Insurance Contract states:

> We will determine the value of lost or damaged property or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
>
> *            *            *

**See Composite Exhibit "A"**, Paragraph E.4.g.

111.   Neither the Westchester Insurance Contract nor the Mt. Hawley Insurance Contract as adopted by the Westchester Insurance Contract defines the standards governing WESTCHESTER's exercise of its discretion or the standards governing the time-frame within which WESTCHESTER must adjust or value a claim.

112.   Although the Westchester Insurance Contract does not specify the time-frame within which WESTCHESTER must determine the value of RESIDENCES' claim, RESIDENCES reasonably expected WESTCHESTER to exercise its discretion within a reasonable amount of time given the nature of the loss and the attendant circumstances.

113.  Some three years later, through its delay and failure to adjust RESIDENCES' claim, WESTCHESTER continues to deprive RESIDENCES of the benefits of the Westchester Insurance Contract.  Following Hurricane Wilma on October 24, 2005 and continuing to the present, WESTCHESTER has breached the implied covenant of good faith and fair dealing by delaying and failing to reasonably value the losses or damage RESIDENCES sustained during Hurricane Wilma; delaying and failing to reasonably determine the cost to repair or replace RESIDENCES' property that was damaged or lost during Hurricane Wilma; delaying and failing to make reasonable efforts to agree with RESIDENCES as to the value of the lost or damaged property or the cost of its repair or replacement; and, failing to value and/or adjust the loss with RESIDENCES promptly and reasonably given the attendant circumstances.

114.  WESTCHESTER's delay and failure to timely adjust RESIDENCES' claim has frustrated the purpose of the Westchester Insurance Contract and had disappointed RESIDENCES' reasonable commercial expectations under the Westchester Insurance Contract.

115.  As a direct result of WESTCHESTER's breaches of the implied warranty of good faith and fair dealing in the Westchester Insurance Contract, RESIDENCES has suffered general compensatory damages in the millions of dollars.  RESIDENCES has also suffered special damages, including, but not limited to, the expenses of defending liens resulting from hurricane related roof repairs for which MT. HAWLEY unreasonably failed to adjust, pay or settle.

116.  RESIDENCES is entitled to recover its reasonable attorneys' fees pursuant to Section 627.428, *Florida Statutes*, which provides in pertinent part:

> Upon rendition of a judgment of decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the inured beneficiary a reasonable sum as fees or compensation for the insured's of beneficiary's attorney prosecuting the suit in which the recovery is had.

117. Alternatively, Section 626.911, *Florida Statutes*, provides in pertinent part:

> In any action against an unauthorized foreign insurer, alien insurer, or person representing or aiding such an insurer, upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business there, if the insurer or person representing or aiding such insurer has failed for 30 days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, the trial judge shall allow to the plaintiff a reasonable attorney's fee or compensation and include such fee or compensation in any judgment that may be rendered in such action.

118. RESIDENCES is further entitled to recover prejudgment interest pursuant to Section 627.70131, *Florida Statutes*

WHEREFORE, RESIDENCES demands judgment against WESTCHESTER for compensatory damages and special damages, together with interest, costs and attorneys' fees under 627.428, *Florida Statutes,* and such other relief as this Court deems just, equitable and proper.

## **JURY DEMAND**

RESIDENCES demands a trial by jury on all claims, defenses and issues so triable in the entire case.

*(Signature follows)*

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  * Facsimile (561) 820-2542

28 of 109

DATED this _14th_ day of May, 2009.

Respectfully submitted,

KATZMAN GARFINKEL ROSENBAUM LLP
Attorneys for Plaintiff
250 Australian Avenue South, Suite 500
West Palm Beach, Florida 33401
(561) 653-2900; Fax (561) 820-2542
Email: drosenbaum@kgrlawfirm.com
Email: jsiracusa@kgrlawfirm.com
Email: jlawrence@kgrlawfirm.com
Email: mkeegan@kgrlawfirm.com
Email: rvaluntas@kgrlawfirm.com

BY: _____
DANIEL S. ROSENBAUM
Florida Bar No. 306037
JOSEPH M. SIRACUSA
Florida Bar No. 159670
JENNILYNN E. LAWRENCE
Florida Bar No. 155896
MARK G. KEEGAN
Florida Bar No. 503371
RICHARD VALUNTAS
Florida Bar No. 151084

723288

KATZMAN GARFINKEL ROSENBAUM LLP * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900  *  Facsimile (561) 820-2542

29 of 109

# COMPOSITE EXHIBIT "A"



**Mt. Hawley Insurance Company**
Peoria, Illinois 61615

# Commercial Property Policy Declarations Page

**Policy No.** MCP0140064

**Named Insured and Mailing Address:**
El Ad Residences At Miramar Lakes
Condominium Association, Inc.
7975 NW 154th Street Suite #200
Miami Lakes, FL 33016

**Agent/Broker and Mailing Address:**
Swett & Crawford-New York
Two Wall Street
New York, NY 10005

**Policy Period:** From 09/07/2005   to 09/07/2006   at 12:01 A.M. Standard Time at your mailing address shown above.

**DESCRIPTION OF PREMISES**

Covered Locations Listed Below :
2480 West Preserve Way, Miramar, FL 33025

**CAUSES OF LOSS:** Special including Earthquake excluding Flood

**LIMITS OF INSURANCE**

Total coverage (limit) applicable  Limit $2,000,000          ,  part of $2,000,000

The above limit applies to the following and is subject to any sublimits stated elsewhere in the policy:
   Building *
   Business Personal Property *
   Business Income (without Extra Expense)
*  Replacement Cost Applies

**Per Occurrence Loss Limit**
At no time will we pay more than $2,000,000          for a loss due to a single occurrence or event.

**Deductible(s):** Refer to CPR 2218, Declarations - Deductible Addendum

**Forms Made A Part Of This Policy At Time Of Issue:** See CPR 2150, Applicable Forms & Endorsements

| | | |
|---|---|---|
| **PCA Fees** | $ | |
| **Inspection Fees** | $ . | |
| **Total Premium** | $ | **PREMIUM INFORMATION REDACTED** |
| **Amount Payable At Inception** | $ | |

*Jeffrey S. Wofen*
Authorized Signature

PB  9/28/2005

FRPR 100 (02/02)

**COMPOSITE
EXHIBIT "A"**

Page 1 of 1

Policy Number: MCP0140064

Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DECLARATIONS - DEDUCTIBLE ADDENDUM

The following deductible wording is in addition to all other deductible wording found elsewhere in this policy. All other deductible wording found in and made a part of this policy also applies. Each claim for loss or damage will be adjusted separately.

**PERIL DEDUCTIBLE(S)**

$10,000 Per Occurrence for All Covered Perils, except:
3.00% of total values at risk Per Building (including time element if applicable) at the time of loss  for Windstorm or Hail
$50,000 Per Occurrence for Earthquake

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2218 (11/04)

Page 1 of 1

**Mt. Hawley Insurance Company**
9025 North Lindbergh Drive, Peoria, IL 61615

## SUPPLEMENTAL DECLARATIONS

Policy No:  MCP0140064

Named Insured and Mailing Address

El Ad Residences At Miramar Lakes
Condominium Association, Inc.
7975 NW 154th Street Suite #200
Miami Lakes, FL 33016

If coverage for Certified Acts of Terrorism, as defined in the Terrorism Risk Insurance Act of 2002, is provided under the terms of your insurance policy, losses caused by acts of terrorism is partially reimbursed by the United States under a formula whereby the United States pays 90% of covered terrorism losses exceeding a prescribed deductible to the insurance company providing for the coverage.

Portion of premium attributable to coverage for Certified Acts of Terrorism          $ 19,689

Portion of premium attributable to coverage for Certified Acts of Terrorism
(fire only),  as required by law                                                     $ Not Applicable

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

CPR 110A (02/03)

Policy Number: MCP0140064

Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULED LOCATIONS ENDORSEMENT

| Location Number | Coverage Type | Declared* Values | Valuation** | Description and Location of Property Covered |
|---|---|---|---|---|
| 00001 - 001 | Building | $48,200,000 | RCV | Built: 2002, Masonry - Joisted<br>2480 West Preserve Way<br>Miramar, FL  33025 |
| 00001 - 001 | Business Personal Property | $250,000 | RCV | Built: 2002, Masonry - Joisted<br>2480 West Preserve Way<br>Miramar, FL  33025 |
| 00001 - 001 | Business Income (without Extra Expense) | $1,000,000 | ALS | Built: 2002, Masonry - Joisted<br>2480 West Preserve Way<br>Miramar, FL  33025 |
| | Total Insured Value | $49,450,000 | | |

\*     For Limit of Insurance please see Declarations page of this policy.
\*\*    Indicate: ACV (Actual Cash Value), ALS (Actual Loss Sustained), FRC (Functional Replacement Cost), RCV (Replacement Cost Value), SP (Selling Price) or SV (Stated Value).

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2194 (10/01)

Page 1 of 1

Policy Number: MCP0140064                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# APPLICABLE FORMS & ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.

| | |
|---|---|
| CPR-2218(11/04) | Declarations - Deductible Addendum |
| CPR-110A(02/03) | Supplemental Declarations |
| CPR-2194(10/01) | Scheduled Locations Endorsement |
| CP-0010(04/02) | Building and Personal Property Coverage Form |
| CP-0017(04/02) | Condominium Association Coverage Form |
| CP-0032(04/02) | Business Income (Without Extra Expense) Coverage Form |
| CP-1030(04/02) | Causes Of Loss - Special Form |
| CP-0090(07/88) | Commercial Property Conditions |
| IL-0017(11/98) | Common Policy Conditions |
| CPR-2129(03/03) | Minimum Premium Endorsement - Percent of Premium |
| CPR-2155(01/04) | Earthquake Extension |
| CPR-2212(03/02) | Additional Named Insureds |
| IL-0415(04/98) | Protective Safeguards |
| CP-0125(06/95) | Florida Changes |
| CPR-2126(10/01) | Limitation of Liability Endorsement Form B |
| CPR-2187(10/01) | Exclusion of Certain Computer Related Losses-A |
| CPR-2221(02/03) | Certified Terrorism Loss |
| CPR-2230(05/03) | Terrorism Exclusion |
| CPR-2257(09/04) | Conditional Terrorism Exclusion |
| IL-0255(07/02) | Florida Changes - Cancellation And Nonrenewal |
| RIL-099(01/01) | Service of Suit Endorsement |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CPR 2150 (10/01)                        Archive                        Page 1 of 1

Policy Number: MCP0140064                                    Mt. Hawley Insurance Company

# BUILDING AND PERSONAL
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H – Definitions.**

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

CP 00 10 04 02                    © ISO Properties, Inc., 2001                    Page 1 of 15
Archive

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This Paragraph **n.,** does not apply to your "stock" of prepackaged software.

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines, or autos you manufacture, process or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

© ISO Properties, Inc., 2001
Archive

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

### 3. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

### 4. Additional Coverages

#### a. Debris Removal

(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) Examples

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 ($50,000 - $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $ 10,000 |

The debris removal expense is less than 25% of the sum of the loss payable plus

© ISO Properties, Inc., 2001
Archive

the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 ($80,000 - $500) |
| Debris Removal Expense | $ | 30,000 |
| Debris Removal Expense Payable | | |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it

from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

© ISO Properties, Inc., 2001
Archive

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

© ISO Properties, Inc., 2001
Archive

f. **Electronic Data**

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

5. **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

If this policy covers Building, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

© ISO Properties, Inc., 2001
Archive

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(iii) Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of

© ISO Properties, Inc., 2001
Archive

Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d.  Property Off-Premises**

(1)  You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

(a)  Temporarily at a location you do not own, lease or operate;

(b)  In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

(c)  At any fair, trade show or exhibition.

(2)  This Extension does not apply to property:

(a)  In or on a vehicle; or

(b)  In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3)  The most we will pay for loss or damage under this Extension is $10,000.

**e.  Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1)  Fire;

(2)  Lightning;

(3)  Explosion;

(4)  Riot or Civil Commotion; or

(5)  Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f.  Non-Owned Detached Trailers**

(1)  You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a)  The trailer is used in your business;

(b)  The trailer is in your care, custody or control at the premises described in the Declarations; and

(c)  You have a contractual responsibility to pay for loss or damage to the trailer.

(2)  We will not pay for any loss or damage that occurs:

(a)  While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b)  During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3)  The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4)  This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B.  Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

© ISO Properties, Inc., 2001
Archive

## C. Limits Of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

## D. Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance – Bldg. 1: | $ 60,000 |
| Limit of Insurance – Bldg. 2: | $ 80,000 |
| Loss to Bldg. 1: | $ 60,100 |
| Loss to Bldg. 2: | $ 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

| | |
|---|---|
| $ | 60,100 |
| – | 250 |
| $ | 59,850   Loss Payable – Bldg. 1 |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139,850.

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Loss to Bldg. 1: (exceeds Limit of Insurance plus Deductible) | $ 70,000 |
| Loss to Bldg. 2: (exceeds Limit of Insurance plus Deductible) | $ 90,000 |
| Loss Payable – Bldg. 1: (Limit of Insurance) | $ 60,000 |
| Loss Payable – Bldg. 2: (Limit of Insurance) | $ 80,000 |
| Total amount of loss payable: | $140,000 |

## E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

© ISO Properties, Inc., 2001
Archive

a.  Pay its chosen appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3.  Duties In The Event Of Loss Or Damage**

a.  You must see that the following are done in the event of loss or damage to Covered Property:

(1)  Notify the police if a law may have been broken.

(2)  Give us prompt notice of the loss or damage. Include a description of the property involved.

(3)  As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4)  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5)  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6)  As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7)  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8)  Cooperate with us in the investigation or settlement of the claim.

b.  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4.  Loss Payment**

a.  In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1)  Pay the value of lost or damaged property;

(2)  Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3)  Take all or any part of the property at an agreed or appraised value; or

(4)  Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b.  The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c.  We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d.  We will not pay you more than your financial interest in the Covered Property.

e.  We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

  © ISO Properties, Inc., 2001<br/>Archive

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F.  Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1.  Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| When: | The value of the property is | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is | 80% |
| | The Limit of Insurance for it is | $ 100,000 |
| | The Deductible is | $      250 |
| | The amount of loss is | $   40,000 |

Step **(1):**  $250,000 \times 80\% = \$200,000$ (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):**  $100,000 : \$200,000 = .50$

Step **(3):**  $40,000 \times .50 = \$20,000$

Step **(4):**  $20,000 - \$250 = \$19,750$

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | The value of the property is | $250,000 |
|---|---|---|
| | The Coinsurance percentage for it is | 80% |
| | The Limit of Insurance for it is | $200,000 |

| | |
|---|---|
| The Deductible is | $   250 |

| | |
|---|---|
| The amount of loss is | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

When:  The value of property is:

| | |
|---|---|
| Bldg. at Location No. 1 | $ 75,000 |
| Bldg. at Location No. 2 | $100,000 |
| Personal Property at Location No. 2 | $ 75,000 |
| | $250,000 |

| | |
|---|---|
| The Coinsurance percentage for it is | 90% |

| | |
|---|---|
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $180,000 |

| | |
|---|---|
| The Deductible is | $   1,000 |

| | |
|---|---|
| The amount of loss is: Bldg. at Location No. 2 | $ 30,000 |
| Personal Property at Location No. 2 | $ 20,000 |
| | $ 50,000 |

Step (1):  $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):  $180,000 ÷ $225,000 = .80

Step (3):  $50,000 x .80 = $40,000

Step (4):  $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

a.  The term mortgageholder includes trustee.

b.  We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c.  The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1)  Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3)  Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e.  If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1)  The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2)  The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgageholder at least:

© ISO Properties, Inc., 2001
Archive

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Agreed Value**

   a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

   b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

   c. The terms of this Optional Coverage apply only to loss or damage that occurs:

      (1) On or after the effective date of this Optional Coverage; and

      (2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

2. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Limit of Insurance that applied on the most recent of the policy inception date,

the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | The applicable Limit of Insurance is | $100,000 |
|---|---|---|
| | The annual percentage increase is | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | 146 |
| | The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

3. **Replacement Cost**

   a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

   b. This Optional Coverage does not apply to:

      (1) Personal property of others;

      (2) Contents of a residence;

      (3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

      (4) "Stock," unless the Including "Stock" option is shown in the Declarations.

      Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

© ISO Properties, Inc., 2001
Archive

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

   (1) Until the lost or damaged property is actually repaired or replaced; and

   (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

   With respect to tenants' improvements and betterments, the following also apply:

   (3) If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of this Coverage Form; and

   (4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

e. We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

   (1) The Limit of Insurance applicable to the lost or damaged property;

   (2) The cost to replace the lost or damaged property with other property:

      (a) Of comparable material and quality; and

      (b) Used for the same purpose; or

   (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

   If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

   f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

   a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

   b. With respect to replacement cost on the personal property of others, the following limitation applies:

      If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

   1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   3. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© ISO Properties, Inc., 2001

Archive

Policy Number: MCP0140064                                    Mt. Hawley Insurance Company

# CONDOMINIUM ASSOCIATION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. – Definitions**.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building**, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, outside of individual units, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure; and

(6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

(a) Fixtures, improvements and alterations that are a part of the building or structure; and

(b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph **A.1.a.(6)** above.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

(1) Personal property owned by you or owned indivisibly by all unit-owners;

(2) Your interest in the labor, materials or services furnished or arranged by you on personal property of others;

CP 00 17 04 02                    ©ISO Properties, Inc., 2001                    Page 1 of 15
                                         Archive

(3) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

But Your Business Personal Property does not include personal property owned only by a unitowner.

c. **Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, back filling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground if there is no basement.

h. Land (including land on which the property is located), water, growing crops or lawns;

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

  ©ISO Properties, Inc., 2001
Archive

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops; or

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs, or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

**4. Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) **Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 50,000 |
| Amount of Loss Payable | $ | 49,500 |
| | ($50,000 – $500) | |
| Debris Removal Expense | $ | 10,000 |
| Debris Removal Expense Payable | $ | 10,000 |

($10,000 is 20% of $50,000)

© ISO Properties, Inc., 2001
Archive

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ ($80,000 – $500) | 79,500 |
| Debris Removal Expense | $ | 30,000 |

Debris Removal Expense Payable

| | | |
|---|---|---|
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

©ISO Properties, Inc., 2001
Archive

e. **Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants," or due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

©ISO Properties, Inc., 2001
Archive

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

f. **Electronic Data**

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

5. **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

©ISO Properties, Inc., 2001
Archive

(b) Buildings you acquire at locations, other than the described premises, intended for:

    (i) Similar use as the building described in the Declarations; or

    (ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

    (i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

    (ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

    (iii) Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

    (i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

    (ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(3) If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

© ISO Properties, Inc., 2001
Archive

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-Premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

    **(a)** Temporarily at a location you do not own, lease or operate;

    **(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

    **(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

    **(a)** In or on a vehicle; or

    **(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-Owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    **(a)** The trailer is used in your business;

    **(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

    **(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

    **(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    **(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

© ISO Properties, Inc., 2001<br>Archive

Each of these Extensions is additional insurance un-less otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Addi-tional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Addi-tional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of In-surance apply, the losses will not be combined in de-termining application of the Deductible. But the De-ductible will be applied only once per occurrence.

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance – Bldg. 1: | $ 60,000 |
| Limit of Insurance – Bldg. 2: | $ 80,000 |
| Loss to Bldg. 1: | $ 60,100 |
| Loss to Bldg. 2: | $ 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$ 60,100
–      250
$ 59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139,850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Loss to Bldg. 1: | $70,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss to Bldg. 2: | $90,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Bldg. 1: | $60,000 |
| (Limit of Insurance) | |
| Loss Payable – Bldg. 2: | $80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Com-mon Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the prop-erty or the amount of loss, either may make writ-ten demand for an appraisal of the loss. In this event, each party will select a competent and im-partial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request