UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60723-CIV-JORDAN/MCALILEY

EL-AD RESIDENCES AT MIRAMAR
CONDOMINIUM ASSOCIATION, INC.,
a Florida not-for-profit corporation,

      Plaintiff,

v.

MT. HAWLEY INSURANCE COMPANY,
a foreign corporation, and WESTCHESTER
SURPLUS LINES INSURANCE COMPANY,
a foreign corporation,

      Defendants.

_____/

## OMNIBUS ORDER

Pending before the Court are the following related motions: (1) Request for Judicial Inquiry [DE 103]; (2) Motion for Protective Order [DE 122]; (3) Motion to Intervene [DE 125]; (4) Motion to Convene Ancillary Proceedings [DE 130]; and (5) Motion for Hearing on Motion to Convene Ancillary Proceedings [DE132].[1]  The Honorable Adalberto Jordan has referred the motions to me for resolution, and for the reasons stated below the Motion to Intervene is granted, and the other motions are denied.

---

[1] Defendant, Westchester Surplus Lines Insurance Company, filed a Motion for Extension of Time to Respond to Motion to Convene Ancillary Proceedings [DE 146].  Because the Court denies the Motion to Convene Ancillary Proceedings is denied, Westchester's Motion is moot.

## I. BACKGROUND

This and a related case arise from an insurance dispute over damage allegedly caused by Hurricane Wilma to two condominium complexes. The Plaintiff in this case, El-Ad Residences at Miramar Condominium Association ("Residences"), retained the law firm of Katzman Garfinkel Rosenbaum LLP ("KGR") to represent it in its claim against its primary property casualty insurer, Mt. Hawley Insurance Company ("Mt. Hawley") and its excess insurer, Westchester Surplus Lines Insurance Company ("Westchester") (collectively, "Defendants"). The other condominium complex, El-Ad Enclave at Miramar Condominium Association ("Enclave"), also retained KGR to bring suit against Mt. Hawley and a different excess insurer, General Star Indemnity Company.[2] In March of this year, while this litigation was on-going, the law firm of KGR broke up, with some of its attorneys, led by Daniel S. Rosenbaum, forming the firm Rosenbaum Mollengarden Janssen & Sircusa ("RMJS"), and others, principally Alan Garfinkel and Leigh Katzman, forming Katzman Garfinkel & Berger ("KGB"). The break-up of KGR has been acrimonious and has led to litigation between the former law partners. The motions now before this Court arise, in large measure, from heated disputes between Rosenbaum on the one hand, and Garfinkel and Katzman on the other.

Immediately following the breakup of KGR, Rosenbaum's law firm, RMJS, entered appearances on behalf of both Residences and Enclave. Thereafter, on April 8, 2010, RMJS

---

[2] The "Enclave case" is filed with this Court as Case No. 09-60726-CIV-JORDAN/MCALILEY.

filed a Request for Judicial Inquiry in this, the Residences case,[3] that can be summarized as follows. Before the formation of KGR, Garfinkel had a law firm called the Garfinkel Trial Group ("GTG"), which hired a consulting firm, Hunter R Contracting LLC ("Hunter R") and TSSA Storm Safe Inc. ("TSSA"), to perform insurance estimates. Kenneth Romain was a member of Hunter R. After several years of this consulting relationship, GTG terminated Hunter R and TSSA, which led to litigation between them over monies owed. These disputes spilled over into a number of ongoing lawsuits filed in state and federal courts, between condominium associations represented by GTG and or the consultants, and the various insurers they had sued. Romain was deposed in a number of those lawsuits and testified that Garfinkel, GTG and the consultants had engaged in a scheme to generate falsely high insurance claims, that Garfinkel had received kickbacks from the consultants, and that Garfinkel, through others, had an improper ownership interest in Hunter R. At a March 30, 2010 deposition taken in several cases, including this case and the Enclave case, Romain recanted these claims of wrongdoing. RMJS asserts that Romain's conflicting sworn testimony demonstrates that Romain has committed perjury, either at his earlier depositions, or at the March 30th deposition, and in its Request RMJS asks this Court to conduct an inquiry into this perjury as well as possible fraud and unethical conduct by Romain, Garfinkel, and possibly others.

Several days after RMJS filed the Request for Judicial Inquiry, Residences again

---

[3] The motion is fully titled Request for Judicial Inquiry into Perjury, and Potential Subornation of Perjury and Witness Tampering. [DE 103].

3

changed counsel: Garfinkel's and Katzman's new firm, KGB, filed a notice of appearance on Residence's behalf, and Rosenbaum's firm, RMJS, withdrew as counsel. RMJS continues to represent Enclave, in Case No. 09-60726-CIV-JORDAN.

The Motion for Judicial Inquiry was filed a few days before a discovery conference I had scheduled for April 16, 2010. I took the opportunity, at the start of that hearing, to ask Rosenbaum to answer some questions I had about his Request for Judicial Inquiry, which he did.[4] Rosenbaum basically restated what is summarized above, and was more clear about his concern that his former partners may have paid Romain to change his testimony.[5] Rosenbaum also disclosed that he had brought his concerns to the U. S. Attorneys Office. As for the inquiry he wants this Court to undertake, Rosenbaum suggested that the Court hold hearings and take testimony from everyone involved: the various attorneys and consultants and possibly the Plaintiffs themselves. He believes that a fraud has been worked upon this and many courts and that this Court should look beyond the issues in this case and inquire into improper conduct in similar cases filed in other divisions of this Court and in various state courts. In the end, Rosenbaum would have this Court determine whether

---

[4] The transcript of that discovery conference has been filed at DE 119.

[5] Rosenbaum included the following information he gave the Court. At a time when difficulties had arisen between Rosenbaum and his partners Garfinkel and Katzman, and they were discussing disassociating from one another, Katzman allegedly said: "'You don't have to worry about Ken Romain if this is an issue because we can pay him off and he will recant his testimony,' and at that point maybe there is 18, 20 people in the room and I said, 'That's outrageous. There would be no way that you could ever do that or that we could ever permit that.'" [DE 119, pp. 14-15].

Garfinkel and Katzman and the consultants engaged in improper conduct before this or other courts, although he was not clear what remedies this Court might order. Having heard from Rosenbaum, I asked the other parties to file written responses to the Request, and offer their opinions whether a judicial inquiry is appropriate and necessary.

The Defendants in both the Residences and Enclave case filed a memorandum in support of this Court convening a broad judicial inquiry. [DE 121]. In that document Defendants provide considerable detail about evidence collected, in a number of cases, of an unethical relationship between Garfinkel and Hunter R and Romain, which Defendants maintain is directly relevant to their defense that the insurance policies have been voided by Plaintiffs' fraud. Defendants acknowledge that there are procedural mechanisms in place that allow this Court to address these issues in this case as needed, but nevertheless argue that a broad inquiry that cuts across case lines is warranted, because Garfinkel and others have "created a fraud upon the judicial process" throughout this District. [DE 121, p. 12]. Defendants identify twelve witnesses who should testify, and ask the Court to subpoena years worth of bank and accounting records from Garfinkel and a list of people associated with him.

Residences, by that time represented by Garfinkel's and Katzman's new law firm, filed a response in opposition to the Request. [DE 127].[6] It argues that it would be improper for this Court to take on an investigative role and suggests that a broad judicial inquiry would

---

[6] Many of the assertions in that response have been repeated in other pleadings they have filed, and which are summarized elsewhere in this Order.

open "an evidentiary Pandora's box." [DE 127, p. 9]. Notably, they assert that "[n]othing has transpired before this Court that would implicate any inherent authority the Court might have to punish or order further action taken with respect to misconduct it observes." [*Id.*, p. 7]. It urges that the issues raised by the Request, and at the April 16 hearing, can be addressed as needed in the normal course of this litigation.

Shortly after the April 16 hearing, Residences filed a Motion for Protective Order Enjoining Daniel Rosenbaum from Further Violating Attorney-Client Privilege to Advance His Own Interests. [DE 122]. While the Motion is filed in the name of Residences, it mostly sets forth a series of accusations that are personal to Garfinkel. The Motion recounts the disputes between GTG and its former consultants Hunter R and Romain, characterizes Romain's accusations against Garfinkel as false, and claims the defendant insurers have unfairly seized upon these allegations to try to defeat the plaintiffs' legitimate claims and have engaged in a campaign to smear Garfinkel's reputation. The Motion calls Rosenbaum a liar [DE 122, p. 17] and makes a series of disparaging accusations against him about matters that bear on the personal dispute between the former law partners, starting with Rosenbaum's "financial misconduct" when he allegedly diverted $700,000 from the KGR bank account into a personal account. Within that context, the Motion charges that Rosenbaum filed the Request for Judicial Inquiry, and spoke in support of that Request at the April 16th hearing, not for any legitimate purpose, but only to gain an advantage in his on-going dispute with Garfinkel and Katzman over the division of their fees and clients.

6

According to the Motion, Rosenbaum served as counsel not only for Residences, but was also counsel to Garfinkel and was part of a Joint Defense Team ("JDT") comprised of an unnamed list of "persons sued and/or affected by" the claims brought by Hunter R, Romain, and TSSA. [DE 122, p. 7]. The Motion charges that in the Request for Judicial Inquiry and at the April 16th hearing, Rosenbaum disclosed privileged information gained as part of those representations, and did so without his clients' authorizations. The Motion also accuses Rosenbaum of giving the Court this information in a manner adverse to his former client Residences.

Resting on these accusations, the Motion asks this Court to use its inherent authority to enter a "protective order" that enjoins Rosenbaum from further disclosures of privileged communications. Remarkably, it goes much further and asks this Court to enjoin Rosenbaum from "appearing in any case or taking any action adverse to Alan Garfinkel or any of his former clients in any case where the allegations of Ken Romain are, directly or indirectly, at issue." [DE 122, pp. 17-18]. Such broad injunctive relief - on its face - is excessive, as it surely would bar Rosenbaum from participating in the judicial dissolution proceedings with his former partners.

The Defendant insurance companies filed oppositions to the Motion for Protective Order. [*See* DE 129, 133]. In those papers the Defendants point out, *inter alia*, that Rosenbaum is neither a party to this lawsuit, nor an attorney of record, that discovery is closed and, in any event, no discovery is pending involving Rosenberg. Although styled a

7

motion for protective order, Defendants rightfully point out that it is better understood as a motion for injunctive relief against someone who is not a party to this lawsuit. Defendants also raise a number of good arguments that question whether information Rosenbaum disclosed was in fact protected by privilege. They also specifically deny that Rosenbaum has given them "any information pertaining to his representation of [Plaintiffs] or other former or current clients." [DE 133, p. 3].

Perhaps recognizing the procedural flaws inherent in Residences' Motion for Protective Order, a few days after they filed that Motion, Garfinkel and Katzman filed their Motion to Intervene to Ensure Preservation of Privilege. [DE 125]. They ask to intervene in this case, individually, to protect their personal interests, including what they claim were privileged communications with Rosenbaum. They add that Rosenbaum has cross-noticed Garfinkel's deposition in this and another case, and predict he will use the deposition to "gain leverage in the partnership dissolution and to harass Garfinkel." [DE 125, p.2].

A few days later, Garfinkel and Katzman filed yet another motion: Motion to Convene Sealed Ancillary Proceedings for Injunctive Relief, Sanctions, and Potential Attorney Disqualification [DE 130].[7] They repeat their accusations about Rosenbaum, and again charge that in the Request for Judicial Inquiry, and at the April 16th hearing, he disclosed privileged information, and made statements adverse to his former client Residences in violation of Florida Bar Rule of Professionalism 4-1.6, 4-1.9(b)-(c), and they

---

[7] They request a hearing on that Motion. [DE 132].

again ask this Court to invoke its inherent power to discipline Rosenbaum. What's new is the way in which Garfinkel and Katzman ask the Court to accomplish this: they would have this Court convene an ancillary proceeding that would be conducted entirely under seal, the sole focus of which would be Rosenbaum's alleged misconduct, that would adjudicate whether Rosenbaum violated the Florida Bar Rules of Professional Conduct, and in the process they would have the Court bar Rosenbaum from filing a response to the Motion. In the end, Garfinkel would have this Court discipline Rosenbaum for breach of his ethical obligations, enjoin him from further misconduct, and disqualify defense counsel from representing their clients in this case, because they have received (unidentified) information protected by the attorney-client privilege and work product doctrine.

## II. ANALYSIS

### A.    Motion to Intervene

Both Garfinkel and Katzman assert their right, pursuant to Rule 24(a), F. R. Civ. P., to intervene in this action "for the limited purpose of protecting the various privileges, and to respond to the personal attacks made upon them individually by Rosenbaum." [DE 125, p. 2]. Garfinkel and Katzman will be permitted to intervene for the former purpose, but not the latter.

According to the Motion to Intervene, Rosenbaum served as counsel for Garfinkel "in the matter which Romain filed against Garfinkel[,]" and their communications in this respect were protected by the attorney client privilege. *Id.* The Motion further asserts that

9

Rosenbaum, as part of the Joint Defense Team represented his former law firm, KGR, and by association its partner, Katzman, and that disclosure of their privileged communications would harm Garfinkel and Katzman in on-going litigation. [DE 125, p. 3].[8]

> Rule 24(a) reads as follows:
>
> (a) Intervention as of Right. Upon timely application anyone shall be permitted to intervene in an action:
>
> (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The law in this Circuit, and others, is clear, that this Court must allow intervention by a client "in the first instance . . . as soon as the [attorney-client] privilege issued is raised." *In re Grand Jury Matter (ABC Corp.)*, 735 F.2d 1330, 1331 (11th Cir. 1984), (quoting *In re Grand Jury Proceedings (Freeman)*, 708 F. 2d 1571, 1575 (11th Cir. 1983); *see also In re Grand Jury Subpoena (Newparent, Inc.)*, 274 F. 3d 563, 570 (1st Cir. 2001) ("Colorable claims of attorney-client and work product privilege [are] . . . a textbook example of an entitlement to intervention as of right."); *United States v. AT&T Co.*, 642 F. 2d 1285, 1292 (D.C. Cir. 1980); *Sackman v. Liggett Group, Inc.*, 167 F.R.D. 6, 20-21 (E.D.N.Y. 1996).

In allowing intervention, this Court notes that Garfinkel and Katzman have not demonstrated that Rosenbaum in fact served as their lawyer, or that he has or will disclose any of their privileged communications. While they have complained mightily that

---

[8] The Motion does not specifically identify what on-going litigation it refers to.

Rosenbaum has already made unauthorized disclosures, Garfinkel and Katzman have not identified for this Court which of Rosenbaum's statements in the Request for Judicial Inquiry, or at the April 16 hearing, they claim are privileged. Moreover, Katzman's assertion of privilege is particularly attenuated: he claims that Rosenbaum, as part of the JDT, represented their former law firm, and that as a partner in the firm Katzman personally claims a privilege as to his statements to Rosenbaum. Further, to the extent Katzman contends that the statement Rosenbaum attributed to him, and repeated at the April 16 hearing ("You don't have to worry about Ken Romain if this is an issue because we can pay him off and he will recant his testimony") was a privileged communication, it would appear to fall squarely within the crime-fraud exception to that privilege. In this and other circuits, Garfinkel and Katzman need not set forth this proof before they intervene. *See In re Grand Jury Proceedings (Freeman)*, 708 F. 2d at 1575 (intervention should have been allowed "once the claim of attorney-client privilege . . . surfaced."); *In re Grand Jury Matter (ABC Corp.)*, 735 F.2d at 1331 (the extent of the attorney-client privilege, and the possibility of unauthorized disclosure must be addressed after intervention); *United States v. AT&T Co.*, 642 F. 2d at 1291 ("determination of the merits of [the] claim [of privilege] is not appropriate at this threshold stage. . . we must accept a party's well-pleaded allegations as valid.")

Upon intervention, Garfinkel and Katzman will have to meet their burden to establish that they were in fact represented by Rosenbaum, and that they had privileged communications in the course of that attorney-client relationship that have been, or are at risk

of, unauthorized disclosure.[9]

Rule 24(a) permits intervention only "upon timely application." As already noted,

Rosenbaum no long represents Plaintiff in this action and he, of course, is not a party. The

Court will have to hear from him however, as it considers Garfinkel's and Katzman's claims

of privilege. The Court will therefore entertain a concise motion by Rosenbaum, pursuant

to Rule 24(a) to intervene in this proceeding, for the same limited purpose of participating

in this Court's consideration of Garfinkel's and Katzman's claims of privilege.

As for Garfinkel's and Katzman's request to intervene to "respond to the personal

attacks made upon them individually by Rosenbaum," they may not do so. [DE 125, p. 2].

As one court has noted, to intervene "the interest must be a legal interest as distinguished

from interests of a general or indefinite character." *United States v. AT&T Co.*, 642 F. 2d at

1292 (citations and quotation marks omitted).[10] This Court does not need to provide

---

[9] In this diversity action, claims of privilege are governed by Florida law. F. R. Evd. 501. The burden of establishing that communications were protected from disclosure by the attorney-client privilege falls upon the party asserting the privilege. *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377, 1383 (Fla. 1994); *Cone v. Culverhouse*, 687 So.2d 888, 892 (Fla. 2d DCA 1997) ("The privilege will not apply unless the party asserting it proves that the communications at issue come within its confines."); *Wal-Mart Stores, Inc. v. Weeks*, 696 So. 2d 855, 856 (Fla. 2d DCA 1997) (same rule applies to work product doctrine). In meeting this burden, each element of the privilege must be affirmatively demonstrated, and the party claiming privilege must provide the court with evidence that demonstrates the existence of the privilege, which often is accomplished by affidavit. *See CSX Transp., Inc. v. Admiral Ins. Co.*, 1995 U.S. Dist. LEXIS 22359 at *4-5 (M.D. Fla. July 20, 1995). In Florida, corporate claims of privilege are subject to a heightened level of scrutiny, and the Florida Supreme Court has established five criteria to establish a corporate claim of attorney-client privilege. *Deason, id.*, at 1383.

[10] While the Second Circuit has recognized that injury to reputation is one that might be served by Rule 24(a), the parties have not cited any similar authority in this Circuit, and this Court is aware of none.

Garfinkel and Katzman a forum to respond to Rosenbaum's "personal attacks." In the numerous pleadings they have filed since Rosenbaum's Request for Judicial Inquiry, Garfinkel and Katzman have already repeatedly answered Rosenbaum's assertions and have done so in a vitriolic manner. Rosenbaum no longer represents Residences, thus he no longer has a voice in this lawsuit to make additional claims about his former law partners. There are other forums in which the former law partners can air their grievances against one another: they are already embroiled in judicial dissolution proceedings, and if complaints have not already been filed with the Florida Bar, they are likely to be.[11] Rule 24(a) does not require intervention by Garfinkel and Katzman to protect themselves from Rosenbaum's complaints against them.

**B.     Motion for Ancillary Proceeding**

Garfinkel and Katzman have also asked this Court to convene an extraordinary ancillary proceeding: it would be held under seal,[12] its sole purpose would be to sanction Rosenbaum for his alleged unauthorized disclosures of his clients' privileged information in his Request for Judicial Action and at the April 16 hearing, enjoin Rosenbaum from future similar conduct, determine whether Rosenbaum violated Florida Bar Rules of Professional

---

[11] For that matter, evidence of criminal fraud, witness tampering or bribery, is best referred to law enforcement authorities.

[12] While the Court can make *in camera* review of possible privileged materials, it will not engage in wholesale closed dockets. Proceedings may be sealed only upon a showing of exceptional circumstances, and harm to reputation is not sufficient to overcome the strong presumption in favor of public access to the courts. *Brown v. Advantage Engineering, Inc.*, 960 F. 2d 1013, 1016 (11thCir. 1992); *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985).

Conduct 4-1.6, 4-1.9 (b)-(c), and to disqualify Defendants' counsel because Rosenbaum has given them Garfinkel's and Katzman's privileged information. Remarkably, they suggest Rosenbaum should have a limited opportunity to defend himself in such an action ("Rosenbaum should be ordered not to disclose any information or file any response, unless permitted by Court order.") [DE 130, p. 2].

The Supreme Court, in *Kokkonen v. Guardian Life Insur. Co. of Amer.*, 511 U.S. 375 (1994), wrote the following about ancillary jurisdiction.

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.
>
> \* \* \*
>
> The doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.
>
> \* \* \*
>
> Generally speaking, we have asserted ancillary jurisdiction . . . for two separate, though sometimes related purposes:  (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Id.* at 377-380 (citations omitted). Garfinkel and Katzman have not carried their burden to demonstrate that their proposed ancillary proceeding would satisfy either purpose. As for the first purpose, this Court clearly has all claims before it necessary to resolve this matter. As for the second purpose, this Court can "manage its proceedings, vindicate its authority, and effectuate its decrees" without extending its jurisdiction. Specifically, it can: (1) resolve

any disputes about privileges and issue appropriate orders; (2) if it needs to pass on ethics breaches by counsel, it has the power to do so;[13] and (3) it can, and will, use its authority to insist that counsel conduct themselves with a degree of restraint and professionalism that has been lacking in many of the pleadings now before this Court.  In sum, this Court will not expand its jurisdiction to engage in an investigation of Rosenbaum.[14]

## C.     Motion for Protective Order

Residences' Motion for Protective Order is also denied.  Residences has not provided this Court with information to support its claim that Rosenbaum has disclosed its confidential attorney-client communications.  The Motion can only be understood as Garfinkel's and Katzman's personal complaints about Rosenbaum, and to the extent they ask this Court to enjoin Rosenbaum, a non-party, from prospective violations of the attorney-client privilege, that motion is denied.[15]  The Court will address Garfinkel's and Katzman's claims of privilege consistent with its ruling on the Motion to Intervene.

## D.     Request for Judicial Action

Rosenbaum, and the Defendant insurers, would both like this Court to step beyond the

---

[13] The Florida Bar is uniquely suited to address compliance with its Rules of Professional Conduct and, at this juncture, this Court defers to the Florida Bar to do just that.

[14] If the Court felt that such an inquiry were appropriate, it would not limit the inquiry to Rosenbaum's alleged transgressions, but would include within its scope the serious allegations of misconduct by Garfinkel and Katzman.

[15] The Court strongly rejects the request that this Court enjoin Rosenbaum from "appearing in any case or taking any action adverse to Alan Garfinkel or any of his former clients in any case where allegations of Ken Romain are, directly or indirectly at issue," as a misuse of its power. [*See* DE 122, pp. 17-18].

four corners of this lawsuit and investigate various possibilities of fraud upon this and other Courts. The proposed areas of inquiry include: (1) Romain's apparent perjury, either at the March 30 deposition, or earlier depositions; (2) whether Garfinkel or Katzman improperly persuaded Romain to recant his sworn accusations against them; (3) whether Garfinkel, Katzman or their consultants engaged in fraud by helping their clients to submit false insurance claims. This alleged misconduct is serious, and this Order should not be misconstrued to suggest otherwise.

This Court nevertheless declines to engage in a free-ranging inquiry into matters pending before other courts, as those courts are best suited to manage their own proceedings. Allegations of inflated insurance claims, kickbacks and improper business relationships between lawyers and consultants have been raised in the course of similar litigation before other courts, where they have been addressed in the context of those proceedings without having to embark on a sweeping investigation. The only new information here is Romain's March 30 deposition testimony in which he recanted his earlier accusations of misconduct by Garfinkel and others, and Rosenbaum's disclosure, at the April 16 hearing, of Katzman's alleged suggestion that Romain could be paid to recant that testimony. These developments, without doubt, are extraordinary. They do not require this Court, however, to broadly investigate matters before other courts and issue rulings that may limit how other courts deal with this evidence, if at all, in the cases before them.

As for this case, this Court can address evidence of fraud, perjury and other

misconduct as necessary to resolve the issues here. For example, whether Residences submitted inflated damage claims is relevant to Defendants' defense that the policy is void. Exactly what evidence bears on this defense and may be submitted to a jury, can be decided with pre-trial motions and at trial. As already noted, to the extent misconduct exceeds the bounds of this litigation there are other forums and authorities to address them.

The point is that this Court has procedural mechanisms in place that allow it to consider these issues, as necessary to bring this case to a just conclusion. Given those mechanisms, this Court will not exercise its discretion to make an extraordinary and unnecessary use of its power.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1.     Residences' Request for Judicial Inquiry [DE 103] is DENIED.

2.     The Defendants' Joint Statement Requesting a Broad Judicial Inquiry [DE 121] is DENIED.

3.     Residences' Motion for Protective Order [DE 122] is DENIED.

4.     Garfinkel's and Katzman's Motion to Intervene [DE 125] is GRANTED.

5.     Garfinkel's and Katzman's Motion to Convene A Sealed and Limited Ancillary Proceeding [DE 130] is DENIED.

6.     Garfinkel's and Katzman's Motion for Hearing [DE 132] is DENIED.

7.     Westchester's Motion for Extension of Time to Respond [DE 146] is DENIED

as moot.

DONE AND ORDERED in chambers at Miami, Florida this 2nd day of June, 2010.

_____

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Adalberto Jordan
Counsel of record
Daniel S. Rosenbaum, Esq., drosenbaum@rmjslaw.com

18