IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60723 CIV-JORDAN/MCALILEY

EL-AD RESIDENCES AT MIRAMAR
CONDOMINIUM ASSOCIATION, INC.,
a Florida not-for-profit corporation,

    Plaintiff,

v.

MT. HAWLEY INSURANCE COMPANY,
a foreign corporation, and WESTCHESTER
SURPLUS LINES INSURANCE COMPANY,
a foreign corporation

    Defendants.

_____/

**PLAINTIFF'S MOTION *IN LIMINE* TO PREVENT
DANIEL S. ROSENBAUM FROM BEING CALLED AS A WITNESS WITH
INCORPORATED MEMORANDUM OF LAW**

Plaintiff El-Ad Residences at Miramar Condominium Association, Inc. ("El Ad Residences"), by and through undersigned counsel, and pursuant to *S.D. Fla. R.* 7.1, hereby moves this Court for an *in limine* order preventing Defendant Mt. Hawley Insurance Company ("Mt. Hawley") from calling El Ad Residences' former counsel, Daniel S. Rosenbaum ("Rosenbaum"), as a witness in this matter and as grounds therefore states:

## I.     INTRODUCTION.

At the eleventh hour, and after discovery was closed, Mt. Hawley listed El Ad Residences' former counsel, Rosenbaum, as a trial witness in this matter. Mt. Hawley listed Rosenbaum as a witness after Rosenbaum had been terminated by El Ad Residences. This Court should prohibit Mt. Hawley from calling Rosenbaum as a witness as El Ad Residences did not have an opportunity to determine, through discovery, the reason why Rosenbaum has been listed as a witness.

Mt. Hawley should be prohibited from calling Rosenbaum as a witness for four additional reasons. First, Rosenbaum does not have any personal firsthand knowledge as to the facts and circumstances involving El Ad Residences' claims. Thus, Rosenbaum is not competent to testify, and his testimony is inadmissible pursuant to *Fed. R. Evid.* 602.

Second, El Ad Residences strenuously objects to Rosenbaum being called as a witness as most, if not all, of the testimony Mt. Hawley will seek from Rosenbaum is protected by El Ad Residences' attorney-client and work-product privileges.

Third, the information Mt. Hawley will likely seek from Rosenbaum is also privileged for two additional reasons. As mentioned in numerous other filings with this Court, Rosenbaum also represented El Ad Residences' current counsel, Alan B. Garfinkel ("Garfinkel") and his prior firm, Katzman Garfinkel Rosenbaum LLP ("KGR"). Thus, Mt. Hawley will likely seek to introduce testimony at trial that Rosenbaum obtained through his attorney-client relationship with Garfinkel.

Fourth, much of the information Rosenbaum obtained from El-Ad, Garfinkel and KGR were subject to a joint-defense privilege. As explained in more detail below, once Garfinkel became aware of fraudulent allegations relating to a contractor who had provided services to El-Ad, Kenneth Romain ("Romain"), a joint defense team (the "JDT") was formed to address a lawsuit filed by Romain (the "Romain issues"). More specifically, Romain filed a lawsuit in which he first made specious allegations of a purported kickback scheme. Shortly thereafter, on September 11, 2008, a complaint was filed by a sub-vendor, TSSA Storm Safe, Inc. ("TSSA") that Romain had retained to assist with the property damage valuations he conducted. Romain has since recanted these allegations.

Because Mt. Hawley will likely seek to introduce information that was disclosed to Rosenbaum by his former clients and the JDT, this Court should enter an order prohibiting Mt. Hawley from calling Rosenbaum as a witness at trial. Accordingly, for these reasons, and for the reasons stated below, El Ad Residences respectfully requests that you grant this motion.

**II.     MEMORANDUM OF LAW**

     **A.     Mt. Hawley Should Be Prohibited from Calling Rosenbaum as a Witness as Rosenbaum Was Disclosed as a Witness After Discovery Was Closed.**

Rule 37(c)(1) provides, in pertinent part: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted

to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 26(a) requires a party to disclose the names and addresses "of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information." *Fed.R.Civ.P.* 26(a). Further, Rule 26(e) requires supplementation of disclosures and responses to discovery, including identities of individuals with relevant information.

In the instant case, Mt. Hawley has no substantial justification for failing to disclose Rosenbaum until after discovery was closed. As explained below, El Ad Residences could not have anticipated that Rosenbaum would be called as a witness, as a party's attorney is only required to provide testimony in exceptional circumstances. *See infra.* In addition, Mt. Hawley's failure to disclose Rosenbaum creates a significant harm to El Ad Residences as it has been denied the opportunity to fairly and adequately prepare for its former attorney's testimony, and is prejudiced by having its former counsel potentially use and/or provide attorney client privileged information. Further, the appearance to a jury of El Ad Residences' former counsel testifying for the defense would be unduly prejudicial. For these reasons, this Court should strike Rosenbaum as a trial witness.

### B. Rosenbaum Does Not Have Personal Firsthand Knowledge of the Underlying Facts.

Any facts Rosenbaum learned relating to the impact of Hurricane Wilma upon El Ad Residences were through secondhand sources. Thus, Rosenbaum does not have personal firsthand knowledge as to the facts in this matter. As such, Rosenbaum is not competent to

testify at trial, and any testimony Rosenbaum may provide is inadmissible pursuant to *Fed. R. Evid.* 602. *See Mehus v. Emporia State University,* 236 F.Supp.2d 1221,1227 (D. Kan. 2004). Accordingly, this Court should prohibit Mt. Hawley from calling Rosenbaum as a witness at trial.

### C. An Order Excluding Rosenbaum's Testimony Is Proper as Rosenbaum Was El Ad Residences' Former Attorney.

"Clients must at all times feel free to openly communicate with their attorneys without fear that the attorneys will later be witnesses against them." *In re Trasylol Products Liability Litigation,* 2009 WL 2575659 *3 (M.D. Fla. 2009), citing to *Upjohn v. U.S.,* 449 U.S. 338, 389 (1981). Testimony of attorneys who have provided legal advice to clients is disfavored as such testimony "should be employed only in limited circumstances." *Id.* This is because, as stated by the United States Supreme Court:

> In performing his various duties, ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel...
>
> Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interest of the clients and the cause of justice would be poorly served.

*Id.,* citing to *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947).

Under Florida law, "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such person learned of the communications because they were made in the rendition of legal services to

5

the client." *Fla. Stat.* § 90.502(1)(c). "A communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than…[t]hose to whom disclosure is in furtherance of the rendition of legal services to the client…[and] [t]hose reasonably necessary for the transmission of the communication." *Fla. Stat.* § 90.502(1)(c). "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." *Fla.R.Prof.Conduct,* 4-1.6 cmt. Moreover, *Fla.R.Prof.Conduct,* 4-1.9(b) states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter use information relating to the representation to the disadvantage of the former client..."

Pursuant to *Fla. R. Prof. Conduct* 4-1.6, a lawyer shall not reveal information relating to representation of a client, unless certain limited circumstances are present, none which are present in the instant case. This duty of confidentiality pursuant to *Fla. R. Prof. Conduct* 4-1.6 continues even after the attorney-client relationship is terminated. *See Kenn Air Corp. v. Gainesville-Alachua County Regional Airport Authority,* 593 So.2d 1219, 1222 (Fla. 1st DCA 1992), citing to *T.C. Theater Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D. N.Y. 1953).

Further, in addition to the duty of confidentiality, an attorney owes a former client a duty of loyalty that also survives the termination of an attorney-client relationship. *See Tambourine Comerico Int'l. S.A. v. Solowsky,* 2007 WL 689466 * 9(S.D. Fla. 2007). An attorney's duty of absolute loyalty to his client's interests does not end with his retainer. *See*

*id.* "He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship." *Id.,* citing to *T.C. Theater Corp.,* 113 F.Supp. at 268.

While Mt. Hawley may try to argue that it needs Rosenbaum's testimony to establish its affirmative defenses, as explained by the Second District, "the attorney-client privilege cannot be set aside simply because the opposing party claims that the information held by the attorney is necessary to prove the opposing party's case." *Coates v. Akerman, Senterfitt & Eidson, P.A.,* 940 So.2d 504, 510 (Fla. 2d DCA 2006). In *Coates,* the plaintiffs sued Akerman Senterfitt & Eidson ("Akerman") for legal malpractice related to a tax plan and the establishment of a joint venture. *See id.* Akerman, in turn, sued some of the plaintiffs' other attorneys and accountants for contribution and indemnification. *See id.* at 507. During discovery Akerman sought production of documents relating to any advice (legal or otherwise) that the plaintiffs received from the tax plan and the joint venture. *See id.* The plaintiffs objected on the basis that the request included information protected by the attorney-client privilege. *See id.* Following a hearing, the trial court compelled plaintiffs to produce all responsive documents based upon the "at issue" doctrine. *Id.* at 508. "The court stated that "[w]here the attorney-client communications are central to matters at issue in the litigation, as they are in this case, policy weighs in favor of disclosure of such communications rather than secrecy." *Id.* The Second District reversed the trial court's order. *See id.* at 511.

In reversing the trial court's decision, the court noted that the plaintiffs had not placed at issue their communications with other professionals about the plan or joint venture simply by suing the lawyers. *See id.* at 508. "Rather, the lawyers, by asserting a defense based upon the clients' alleged communications with others, have sought to place such communications at issue." *Id.* The court further stated:

> The lawyers have not shown that the clients must necessarily offer the disputed documents at trial to prove their claims. Instead, the lawyers seek the documents in the hope that they will contain information helpful to the lawyers' defense or third-party claims.
>
> The lawyers cannot, by assertion of a comparative fault defense, create a waiver of the clients' attorney-client privilege with respect to the clients' other counsel.

*Id.* Thus, attorney-client privileged information cannot be waived simply because the party who is not asserting a privilege injects the issue involving privileged information into the litigation. *See id.* at 510, citing to *Choice Restaurant Acquisition Ltd. v. Whitley, Inc.,* 816 So.2d 1165, 1167 (Fla. 4th DCA 2002).

In the instant case it is undisputed that Rosenbaum represented El Ad Residences. Any knowledge that Rosenbaum obtained in this matter was as El Ad Residences' attorney, including information provided to Rosenbaum by El Ad Residences, and information he learned or produced through work product for this matter. Thus, this information is protected by both the attorney-client and work-product privileges. As explained above, testimony of attorneys who have provided legal advice to clients is disfavored and such testimony "should be employed only in limited circumstances. This case does not meet such a circumstance.

8

If Rosenbaum is called as a witness at trial, El Ad Residences will be unduly prejudiced.

Mt. Hawley also cannot force Rosenbaum to provide testimony at trial by improperly injecting the Romain issue into this litigation. El-Ad is not relying upon any work prepared by Romain in its case. Thus, any reference to Romain in this matter is irrelevant and unduly prejudicial. Further, El-Ad cannot be deemed to have waived any privilege as a result of Mt. Hawley "injecting" the Romain issues into this litigation. Thus, because Mt. Hawley cannot demonstrate any extreme circumstance to justify calling Rosenbaum as a witness at trial, Mt. Hawley should be precluded from doing so.

### D. An Order Excluding Rosenbaum's Testimony Is Proper as Rosenbaum Was Garfinkel's and KGR's Former Attorney.

During the time that Rosenbaum represented El Ad Residences, he was a partner at KGR. At this time, Rosenbaum also represented one of El Ad Residences' current attorneys, Garfinkel, individually, and KGR in ongoing litigation to defend allegations made by Romain. As stated above, Romain filed a lawsuit in which he first made specious allegations of a purported kickback scheme, allegations which Romain recanted at his deposition taken in this case.

Mt. Hawley will undoubtedly seek to question Rosenbaum regarding privileged information provided to Rosenbaum by Garfinkel. For the same reasons as listed above, Mt. Hawley should be precluded from calling Rosenbaum as a witness as any such testimony is privileged and would unduly prejudice Garfinkel.

9

### E. Mt. Hawley Will Likely Seek Information Provided to Rosenbaum by Garfinkel, KGR and the JDT.

Separate and apart from the attorney-client privilege that Rosenbaum owes to El-Ad and Garfinkel, numerous courts have recognized a joint defense privilege, which must also be protected. The joint defense privilege "enables litigants who share unified interests to exchange…privileged information to adequately prepare their cases without losing the protection afforded by the [attorney-client] privilege." *Visual Scene, Inc. v. Pilkington Bros, PLC*, 508 So.2d 437, 440 (Fla. 3rd DCA 1987). Joint defense arrangements present an opportunity to pool resources, exchange information, marshal legal talent and advice, and maintain a united front against a common litigation foe. *Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D. NY 2003). Under the protective cloak of the joint defense privilege, "clients and their respective attorneys sharing common litigation interests may exchange information freely among themselves without fear that by their exchange they will forfeit the protection of the [attorney-client] privilege." *Id.* The joint defense privilege does not just protect communications among the group but also protects work product and other information gathered or prepared by the joint defense team. *Western Fuels Ass'n., Inc. v. Burlington N. R.R. Co.*, 102 F.R.D. 201, 203, 204 (D. Wy. 1984); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g. Corp.*, 125 F.R.D. 578, 587 (N.D. NY 1989).

The joint defense privilege bars all participants in the team from disclosing the pooled information and strategies developed by the team. *U.S. v. McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir. 1979). In effect, each counsel who is a member of the team becomes counsel for

each co-defendant. *Id*.; *see also U.S. v. Henke*, 222 at 637-38 ("[a] joint defense agreement establishes an implied attorney-client relationship with the co-defendant").

A seminal case regarding the joint defense privilege is *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250 (5th Cir. 1977). In that case, the court considered whether it should disqualify plaintiff's counsel from suing a party who was a co-defendant of a former client of that attorney in a related matter. The court held:

> a former client seeking to disqualify an attorney who appears on behalf of his adversary, need only to show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him….This rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation. The Court may not even inquire as to whether such disclosures were in fact made or whether the attorney in fact is likely to use the damaging disclosures to the detriment of his former client….The inquiry is limited solely to whether the matters of the present suit are substantially related to the matters of prior representation.

*Id*. at 252 (citations omitted).

The court went on to hold that the same rules apply in the joint defense context, *i.e.*, in cases where the party seeking to disqualify the attorney was not his direct client, but was a co-defendant of a client who was part of a joint defense group. The court stated:

> We …hold that when information is exchanged between various co-defendants and their attorneys that this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause. In such a situation, an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use the information to the detriment of one of the co-defendants. Just as an attorney would not be allowed to proceed against his former client in a cause of action substantially related to the matters in which he previously represented that client, an

11

> attorney should not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense.

*Id.* at 253 (citations omitted).

In *U.S. v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000), the court held that an attorney who was a member of a joint defense team was disqualified from cross examining a co-defendant who began cooperating with the government. The court found that the attorney had a conflict of interest since he would necessarily rely on matters learned through the joint defense team in order to conduct the cross examination. The *Hencke* decision confirms that the duty to protect confidential information under a joint defense agreement extends beyond the duty not to disclose and includes the duty not to use the information in any manner adverse to the interest of the client or his co-defendants. *Hencke* 222 F.3d at 637-38.

In response to the lawsuits filed by Romain and TSSA, the JDT was formed. On September 29, 2008, several lawyers from several different firms which represented one or more of the persons sued and/or affected by the suits, including Garfinkel, met and agreed to a collective defense. This meeting took place in the Orlando offices of Greenberg Traurig and Rosenbaum was present throughout. By virtue of his seniority in terms of his trial experience and because he was Garfinkel's partner, Rosenbaum was the de facto head of the JDT. Between September 2008 and April 2010, Rosenbaum regularly participated in voluminous e-mail exchanges, telephone conferences, and meetings where developments and

strategies were discussed and determined for the purpose of defeating Romain's false allegations.[1]

Rosenbaum acted as counsel for Garfinkel and KGR, and filed appearances on KGR's behalf, in cases where Romain's allegations were at issue. He also counseled Garfinkel personally as to how to deal with the frivolous allegations made by Romain. Rosenbaum had frequent confidential discussions with clients and attorneys, who were part of the JDT. He was privy to confidential information that affected each member of the group. He discussed and helped formulate a tactical defense.

After the insurance companies began infecting the property loss cases with Romain's false allegations, the scope of the JDT expanded. In addition to directly defending against the claims of Romain and others, Rosenbaum and other JDT members also discussed and developed strategies for dealing with the insurance companies' efforts (including Mt. Hawley) to conduct discovery and introduce evidence concerning the matters Romain alleged. The scope of the JDT subsequently expanded when in the summer of 2009, former employees of the Garfinkel Trial Group tried to extort money based upon their threat to repeat and further publicize the false allegations made by Romain. The common thread which bound the members of the JDT was the effort to defend the false allegations made by Romain. Rosenbaum continued to provide advice and counsel to El-Ad, and the JDT concerning Romain's allegations throughout 2008 and 2009. Rosenbaum resigned from the

---

[1] Garfinkel has submitted numerous documents to Special Master Fernandez which demonstrate Rosenbaum's attorney-client and joint defense relationships.

JDT on April 9, 2010, after the KGR partnership dissolution proceeding was filed against him, and after he was warned in writing to retain the confidentialities required by the JDT. Accordingly, because the testimony that Mt. Hawley seeks to obtain from Rosenbaum is protected by a joint defense privilege, Mt. Hawley should be precluded from calling Rosenbaum as a witness at trial.

### III.   CONCLUSION

For each of the foregoing reasons, Plaintiff El-Ad Residences at Miramar Condominium Association, Inc., respectfully requests that this Court grant this Motion in Limine and prohibit Mt. Hawley Insurance Company from calling Daniel Rosenbaum as a witness at trial.

*Respectfully submitted*,

KATZMAN, WASSERMAN
BENNARDINI, & RUBINSTEIN, P.A.
Attorneys for Plaintiff and Intervenors
Alan B. Garfinkel and Leigh C. Katzman
7900 Glades Road, Suite 140
Boca Raton, Florida 33434
Tel.:  (561) 477-7774
Fax:   (561) 477-7447

By:  /s/  Alexandra Sierra-De Varona
       Steven M. Katzman
       Florida Bar No. 375861
        smk@kwblaw.com
       Alexandra Sierra-De Varona
       Florida Bar No. 195928
       asd@kwblaw.com

## CERTIFICATION OF COMPLIANCE WITH
## LOCAL RULE 7.1(A)(3)

Counsel for Plaintiff certifies that Plaintiff's counsel has made reasonable efforts to confer with Mt. Hawley Insurance Company's counsel as the party who may be affected by the relief sought in this motion , and that Mt. Hawley Insurance does not agree with the relief sought in this motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 23, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>KATZMAN, WASSERMAN
>BENNARDINI, & RUBINSTEIN, P.A.
>Attorneys for Plaintiff and Intervenors
>Alan B. Garfinkel and Leigh C. Katzman
>7900 Glades Road, Suite 140
>Boca Raton, Florida 33434
>Tel.:  (561) 477-7774
>Fax:   (561) 477-7447
>
>By: /s/  Alexandra  Sierra-De  Varona
>       Alexandra Sierra-De Varona
>       Florida Bar No. 195928
>       asd@kwblaw.com

Service List:

Keith J. Lambdin
Katzman Garfinkel & Berger
Counsel for Plaintiff
300 North Maitland Avenue
Maitland, FL 32751
KLambdin@kgblawfirm.com

Daniel S. Rosenbaum
Rosenbaum Mollengarden Janssen
&  Siracusa, PLLC
250 Australian Avenue
One Clearlake Center
West Palm Beach, FL 33401
drosenbaum@rmjslaw.com


Mayanne Downs
Florida Bar No.: 0754900
mdowns@kbdzlaw.com
Frederick S. Wermuth
Florida Bar No.: 0184111
fwermuth@kbdzlaw.com
King, Blackwell, Downs
& Zehnder, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Tel.: (407) 422.2472
Fax: (407) 648.0161
Counsel for Alan B. Garfinkel

Charles M. Greene, Esquire
Law Offices of Charles M. Greene, P.A.
28 E. Washington Street
Orlando, FL 32801-2311
cmg@cmgpa.com

Thomas E. Tookey Esq.
*Counsel for Mt Hawley Insurance Co.*
Tetookeylaw@bellsouth.net
TE Tookey PA
11776 W. Sample Rd. Ste 103
Coral Springs Florida 33065
(954)-344-4441 Fax: (954) 344-4405

JEFFERY H SOLOMON
*United States Attorney For the Southern District of Florida*
99 N. E. 4th Street, Suite 300
Miami, Florida 33132
(954) 961-9290 Fax: (305) 530-7139
Jeffery.Solomon@usdoj.gov

Cortland Putbrese
Morison Holden Derewetzky &
Prough, LLP
Cortland.putbrese@mhdplaw.com
Morison Holden Derewetzky &
Prough, LLP
600 Main Street East, Suite2030
Richmond, VA 23219
(804) 212-1515 Fax: (804) 343-0913

Andrew Lavin
*Counsel for Kenneth Romain*
2699 Stirling Road Suite B-100
Fort Lauderdale, Florida 33312
(954) 967-2788

Brian E. Sims, Esq.
Michael D Prough, Esq.
William C. Morrison, Esq.
*Counsel for Mt Hawley Insurance Co.*
Pro Hac Vice
Brian.sims@mhpdlaw.com
Micheal.prough@mhpdlaw.com
wcm@mhpdlaw.com
Morison Holden Derewetzky &
Prough, LLP
1550 Parkside Drive, Third Floor
Walnut Creek, CA 94596-8068
(925) 937-9990 Fax (925) 937-3272

Daniel H Coultoff, Esq.
*Counsel for Mt Hawley Insurance Co.*
Coultoff@lsbeblaw.com
Latham, Shucker, Barker, Eden &
   Beaudine, LLP
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801
(407) 481-5800 Fax: (407) 481-5801

William Berk, Esquire
wberk@berklawfirm.com
Melissa Sims, Esquire
msims@berklawfirm.com
Scott M. Janowitz
sjanowitz@berklawfirm.com
*Counsel for General Star Indemnity
   Co.*
Berk, Merchant & Sims, PLC

17

2100 Ponce De Leon Blvd., Ph1
Coral Gables, Florida 33134
Telephone: (786) 338-2900
Fax (786)-338-2876